IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-60533

Summary Calendar

_____


GLENDORIA DAVIS, As Administratrix of the Estate of
Vincent T Davis Deceased,

                              Plaintiff-Appellant,

v.

CSX TRANSPORTATION, INC, A Foreign Corp; ROBERT NORMAN
CHRISTEN; ROBERT WARD,

                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(1:97-CV-174-GR)
_____

March 29, 1999

Before KING, Chief Judge, BARKSDALE and STEWART, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-appellant Glendoria Davis, as administratrix of

the estate of Vincent Davis, brought this wrongful death action

against defendant-appellee CSX Transportation, Inc. and the

conductor and engineer of its train that struck and killed

Vincent Davis.  The district court granted defendants-appellees'

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

motion for summary judgment.  Because we determine that Glendoria Davis raised a genuine issue of material fact as to whether defendants-appellees failed to exercise due care upon realizing that Vincent Davis was in immediate danger, we affirm in part and reverse in part, and remand to the district court.

I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants-appellees Robert Christen and Robert Ward were the conductor and engineer, respectively, of a train owned by defendant-appellee CSX Transportation, Inc. (collectively, defendants) as it traveled west through Gulfport, Mississippi during the early morning hours of August 26, 1994.  Shortly after four a.m., the train struck and killed Vincent Davis as he lay on the tracks.

Plaintiff-appellant Glendoria Davis, as administratrix of Vincent Davis's estate, filed this suit in state court on December 12, 1996, alleging that Christen and Ward were negligent in operating the train and that their negligence caused the death of Vincent Davis.  Specifically, Glendoria Davis alleged that Christen and Ward (1) failed to keep an adequate and appropriate lookout, (2) failed to timely identify and react to Vincent Davis's presence on the tracks, (3) operated the train at a speed in excess of CSX guidelines, and (4) failed to equip the train with a sufficiently bright headlight.  Defendants removed the suit to the United States District Court for the Southern District of Mississippi on April 16, 1997 pursuant to 28 U.S.C. § 1441(a).

2

The district court found that Glendoria Davis's claim that Ward and Christen operated the train at an excessive speed was preempted by federal regulations, see CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 673-75 (1993) (holding that federal regulations preempt claim that railroad breached common-law duty to operate its train at moderate and safe rate of speed), and granted defendants partial summary judgment.[1]  Defendants filed a second motion for summary judgment on Glendoria Davis's remaining claims, arguing that they had no duty to keep a lookout for trespassers and, relying on Ward's and Christen's deposition testimony and an expert's analysis, that they took all appropriate action to avoid the accident.

Ward testified in his deposition that at approximately 4:09 on the morning that Vincent Davis was killed, while the train was traveling at about forty miles per hour, he observed an object on the tracks ahead of the train that he initially thought was a log.  Ward stated that he realized almost immediately that it was a person and began blowing the train's whistle.  After initially blowing the whistle with his left hand, Ward explained that he "crossed over" so that he was blowing the whistle with his right hand and engaging the train's brakes with his left hand.  Ward claimed that he does not know how many times he blew the train's whistle, but stated that he blew the whistle with his left hand more than once before engaging the brake.  The person on the

---

[1] Glendoria Davis does not appeal the district court's grant of summary judgment on her excessive speed claim.

tracks, Vincent Davis, did not respond to the whistle, and tests performed subsequent to the accident showed that he had a blood alcohol content of 0.22 percent. The train struck and killed Vincent Davis after Ward engaged the emergency brake.

Ward was unable to estimate how much time elapsed from the time he first saw Vincent Davis on the track until the time he engaged the brake. Christen stated that he was looking to the rear of the train when he heard the first whistle, and that Ward engaged the brakes "very shortly after" the first whistle. Ward claimed that he did not know how far Vincent Davis was in front of the train when he first identified him, but that he had continuously observed the track ahead of the train for at least two or three minutes prior to identifying Vincent Davis, and that the engine's headlamp was on "bright."

Defendants included in their motion for summary judgment an analysis by Robert MacRae that concluded, "It is highly unlikely that the crew members could have recognized . . . the object on the track as an incapacitated person" from more than 1050 feet away. MacRae determined that the train was traveling at thirty-six miles per hour (52.8 feet per second) and had a braking distance of 1200 to 1220 feet. MacRae suggested that the period of perception and reaction by a train engineer is typically 1.5 to 2 seconds when the action to be taken is immediately obvious and in conditions of good visibility during daylight hours, and that the detection and identification of a human form at night can easily require five or more seconds. Based on this data,

4

defendants argued that they could not have avoided striking Vincent Davis.

Glendoria Davis argued to the district court that the "key issue" in determining whether defendants were negligent is "the time in which the train operators knew or should have known that an unmoving human form was laying on the railroad tracks" and whether they failed to promptly apply the emergency brakes.[2] Glendoria Davis relied on the report and opinion of James Sobek, an engineer she retained to investigate the collision. Sobek reported that the illumination provided by the train was "much more than sufficient" for defendants to identify Vincent Davis's body at a distance of 1300 feet from the point of impact, and that as the train moved over the next 100 feet "any crew member looking up that track from the locomotive cab would have concluded that a human being or some object very like a human being was lying in the tracks." After investigating the accident scene, Sobek testified in a deposition that he had revised his opinion and believed that an object on the rails could have been

---

[2] In her brief opposing defendants' motion for summary judgment, Glendoria Davis conceded that defendants were not negligent for failing to have a sufficient headlight on the train, noting that her expert determined "that the brightness of the train's headlight in the instant case far exceeded the minimum standards established by federal regulations governing train headlights." Glendoria Davis also provided no support for her claim that defendants failed to keep an adequate and appropriate lookout, and states in her appellate brief that their "responsibility to keep a lookout for trespassers is not implicated in the instant case." We therefore agree with the district court that Glendoria Davis failed to raise an issue of material fact as to either of these allegations and affirm its grant of summary judgment on these claims.

identified from 2000 feet away and that at 1500 feet "anybody who made an observation, looking up the track, would see that there is something that is distinctly different and very human like." Sobek stated, however, that he could not testify as to what the crew actually saw prior to impact with Vincent Davis.

Glendoria Davis also relied on the report of James Loumiet, an accident reconstruction analyst. Based on the train's event recorder printout, Loumiet determined that the train was traveling at about thirty-two miles per hour (46.9 feet per second) when the emergency brakes were applied and that the train stopped in emergency braking in about 1010 feet. After investigating the accident scene, Loumiet testified in a deposition that the train stopped 932 feet past the point of impact, and that therefore the emergency brakes were applied seventy-eight feet before the train struck Vincent Davis.[3] Although Loumiet testified that he had no opinion regarding when defendants first saw Vincent Davis or how much time elapsed between the time Ward began blowing the horn and the time he

---

[3] Loumiet's original report, and Glendoria Davis's brief before the district court, concluded that the train traveled 393 feet from the point of impact, and that therefore the brakes were applied 617 feet before impact. Glendoria Davis used this data, with a speed of 36 miles per hour and a visibility of 1300 feet, to conclude that defendants waited almost 13 seconds after identifying Vincent Davis before they applied the emergency brakes, and that if they had applied the brakes within the first five seconds the collision would have been avoided. In considering this motion for summary judgment, the district court properly drew all factual inferences in Glendoria Davis's favor and relied on her updated data. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

engaged the brakes, Glendoria Davis argued that this evidence demonstrates that one could reasonably deduce that defendants failed to promptly apply the brakes after identifying Vincent Davis, and that this negligence cost him his life.

The district court determined that Vincent Davis was a trespasser on the tracks at the time of the accident and that, under Mississippi law, a railroad has no duty to keep a lookout for trespassers. See Maxwell v. Illinois Cent. Gulf R.R., 513 So. 2d 901, 905 (Miss. 1987). Before the moment that they spotted a person on the tracks, defendants had only a duty to refrain from wilfully, wantonly, or grossly negligently injuring Vincent Davis. See id. Only when defendants became aware of Vincent Davis's presence on the tracks did they have a duty to exercise ordinary or reasonable care under the circumstances to avoid injuring him. See id. The district court determined that to fulfill this duty, an engineer in this situation must, upon seeing a person in danger, blow the whistle if there is time within which this may be done, and, if the circumstances show that the person will probably not seek safety, the engineer must stop the train if the trespasser's peril is appreciated in time to stop. See Young v. Columbus & G. Ry., 147 So. 342, 343 (Miss. 1933); Gulf & Ship Island R.R. v. Williamson, 139 So. 601, 602 (Miss. 1932); Yazoo & Miss. Valley R.R. v. Lee, 114 So. 866, 870 (Miss. 1927).

The district court found that the evidence established that the whistle was blown as soon as the engineer spotted the object

on the tracks.  The district court rejected Glendoria Davis's argument that her evidence suggested that Ward decided to "merely blow the horn" when he should have applied the brakes because Ward applied the brakes 30.5 seconds, or more than 1400 feet, from the point where Sobek testified anyone observing the track would have seen a human-like form.  The district court determined that Glendoria Davis offered no proof as to when Ward first saw a person on the tracks or how much time elapsed until he applied the brakes, and because a railroad's duty of reasonable care toward a trespasser begins only when the railroad becomes aware of the trespasser's peril, the court granted defendants summary judgment.  Glendoria Davis timely appeals.

## II. DISCUSSION

Glendoria Davis argues that the district court erred in granting defendants summary judgment because a genuine issue of material fact exists regarding whether Vincent Davis's peril was appreciated in time to stop the train.  Glendoria Davis asserts that a jury could reasonably conclude on the basis of expert testimony that Ward identified Vincent Davis's body from a distance of over 1500 feet but failed to stop the train in a reasonable manner.  See Williamson, 139 So. at 602 (determining there was sufficient evidence supporting jury verdict for plaintiff where jury could reasonably disbelieve train operator's testimony that he did not see the deceased when deceased was within the effective range of the train's headlight).  Furthermore, because it is undisputed that Vincent Davis did not

8

move at any time during the sequence of events and Ward testified that his body looked like a log, Glendoria Davis argues that his peril was "obvious" from 1500 feet and that therefore Ward was negligent for failing to apply the brakes at that time.

## A. Standard of Review

"We review a grant of summary judgment de novo, applying the same criteria used by the district court in the first instance." Texas Manufactured Housing Ass'n v. City of Nederland, 101 F.3d 1095, 1099 (5th Cir. 1996); see Tolson v. Avondale Indus., Inc., 141 F.3d 604, 608 (5th Cir. 1998). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Furthermore, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"; when considering a motion for summary judgment, the court must credit the evidence of the nonmovant and draw all justifiable inferences in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## B. Identifying Vincent Davis

The district court correctly stated that under Mississippi law the operators of a train are required to exercise reasonable care to prevent injuring a trespasser only after they have

9

discovered and realized his peril.  See Maxwell, 513 So. 2d at 905; Illinois Cent. Gulf R.R. v. Ishee, 317 So. 2d 923, 925 (Miss. 1975); Gulf, Mobile & Ohio R.R. v. Hollingshead, 236 So. 2d 393, 395 (Miss. 1970) ("The test of responsibility arises when the engineer becomes aware of the presence and peril of the trespasser.").  This does not mean, however, that a court must accept the train operators' account of when they observed the trespasser and realized his peril.  In Williamson, the Mississippi Supreme Court explicitly considered whether a railroad was entitled to judgment as a matter of law when its operator testified that he did not see the deceased.  See 139 So. at 602.  In that case, the operator testified that he could see 200 to 300 feet beyond a crossing but that he did not see the deceased.  See id. at 601-02.  The physical evidence indicated, however, that the deceased was at the crossing when the train's light first fell upon him and approximately 130 feet from the crossing when the train struck him.  See id. at 602.  The district court affirmed the jury's verdict for the plaintiff, determining that the evidence supported the conclusion that the operator "did see the deceased, that in the nature of things he was obliged to have seen him, and that the statement of the [operator] that he did not see the deceased could reasonably be disbelieved."  Id.; see also Dickerson v. Illinois Cent. R.R., 145 So. 2d 913, 920 (Miss. 1962) (determining that plaintiff's evidence regarding hypothetical visibility of deceased "was properly admitted and considered by the [court] as testimony

10

offered to discredit the testimony of the defendant engineer"); cf. <u>Ishee</u>, 317 So. 2d at 925-26 (determining that evidence of a visibility experiment six months after the accident, after weeds had been cleared and using a stationary stepladder, was inadmissible because conditions were not sufficiently similar).

Defendants argue that Glendoria Davis cannot prevail on her negligence claim because the district court correctly determined that she presented no evidence indicating when defendants saw Vincent Davis and that her reliance on <u>Williamson</u> is misplaced because Ward admits seeing Vincent Davis. Defendants contend that by offering Sobek's opinion that Vincent Davis could be seen at a distance of 1500 feet, Glendoria Davis is really arguing that defendants <u>should</u> have seen Vincent Davis at that distance and were negligent because they failed to maintain a proper lookout.

Defendants' arguments, however, misconstrue Glendoria Davis's claim and the court's holding in <u>Williamson</u>. Sobek's opinion that Vincent Davis could be seen at a distance of at least 1300 to 1500 feet, like the headlight evidence in <u>Williamson</u> and visibility experiments in other cases, is evidence from which a jury could reasonably conclude that Ward actually saw Vincent Davis at that distance. Although defendants are correct in their contention that it is insufficient to say only that Ward <u>should</u> have seen Vincent Davis from a particular distance, it is sufficient to present evidence from which a reasonable jury could infer that the train was at least 1500 feet

11

away when Ward _did_ see Vincent Davis.

Glendoria Davis has successfully raised an issue of material fact as to the distance between the train and Vincent Davis when Ward first identified him.  In fact, because Ward stated in his deposition testimony that he did not know how far Vincent Davis was in front of the train when he first identified him, Sobek's opinion is the only evidence currently in the record as to this distance.

### C. Engaging the Brake

The district court determined that defendants' duty once they identified Vincent Davis was that "the whistle is to be blown if there is time within which this may be done . . . . [T]he engineer must stop the train if the trespasser's peril is appreciated in time to stop the train."  _Maxwell_, 513 So. 2d at 906.  The district court found that "[t]he facts of this case establish that this is precisely the route taken by the train operator in this case."  Defendants argue that the district court's conclusion was correct because Ward testified, and Glendoria Davis does not contest, that upon identifying Vincent Davis he immediately began blowing the whistle.  In addition, defendants contend that Glendoria Davis failed to offer "critical" evidence indicating how much time elapsed between Ward's initial identification of Vincent Davis and his engagement of the brake.

The district court correctly determined that an operator need not slow a train until circumstances show that the person

12

will probably not seek safety, and that "[w]hen the engineer sees a person upon the track he ordinarily has the right to presume that the person is in possession of his faculties and that he will note the alarm being given" when that person is an adult and "apparently normal." Lee, 114 So. at 870. Nonetheless, when circumstances arise that "bring to [the operator's] mind, or should bring to his mind, the reflection that the person is not a normal person or has not heard the alarm and will probably not seek his safety in due time," the operator must stop the train if there is sufficient time to bring the train to a stop to prevent injury to that person. Id.; see Maxwell, 513 So. 2d at 905-06.

Glendoria Davis argues that she presented evidence showing that Ward knew or should have known that it was probable that Vincent Davis would not seek safety in time to avoid this unfortunate result. Glendoria Davis points to Ward's testimony that when he initially identified Vincent Davis's body he mistook it for a log and to its presence on a railroad track at 4:09 in the morning as circumstances suggesting that he would not hear the warning signs and remove himself from danger. Furthermore, there is no evidence that Vincent Davis moved or reacted in any way to the train's whistle, which Ward testified he "just kept blowing" prior to impact. Based on this evidence, we conclude that Glendoria Davis raised an issue of material fact as to whether the circumstances demonstrated that Vincent Davis would not seek safety and whether Ward was therefore required to slow the train.

13

Defendants argue that even if the circumstances demonstrated Vincent Davis would not seek safety, they cannot be found negligent because they could not have stopped the train in sufficient time to avoid injury to Vincent Davis. In support of this argument, defendants rely on Christen's testimony that Ward engaged the brakes "very shortly after" blowing the train's whistle and on MacRae's report suggesting that they could not have stopped the train in time. Glendoria Davis has presented evidence, however, indicating that Ward had more than ten seconds after identifying Vincent Davis to apply the brakes and avoid his injury. Glendoria Davis further contends that the actual time that Ward took to apply the brakes was 30.5 seconds.

Glendoria Davis has raised genuine issues of material fact as to when Ward identified Vincent Davis, when he applied the brakes, and whether the circumstances indicated that Vincent Davis would not seek safety upon hearing the whistle. We therefore reverse the district court's grant of summary judgment on Glendoria Davis's claim that defendants failed to timely identify and react to Vincent Davis's presence on the tracks.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM in part, REVERSE in part, and REMAND to the district court for further proceedings consistent with this opinion.